# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| LAURA RIVAS, Individually and For Others Similarly Situated<br><br>v.<br><br>NES GLOBAL, LLC | Case No. _____<br><br>Jury Trial Demanded<br><br>FLSA Collective Action Pursuant to 29 U.S.C. § 216(b) |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Laura Rivas (Rivas) brings this collective action lawsuit to recover unpaid overtime wages and other damages from NES Global, LLC (NES) under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*

2. Rivas worked for NES as a Safety Advisor assigned to provide services to NES's client, Borealis Compounds, LLC (Borealis).

3. Rivas and the Day Rate Workers (as defined below) regularly worked for NES in excess of forty (40) hours each week.

4. But NES never paid Rivas and the Day Rate Workers overtime.

5. Instead of paying overtime as required by the FLSA, NES misclassified Rivas and the Day Rate Workers as exempt from overtime and paid them a flat amount for each day worked (a "day rate") without overtime compensation.

6. NES never paid Rivas or the Day Rate Workers on a "salary basis."

7. This collective action seeks to recover the unpaid overtime wages and other damages owed to Rivas and the Day Rate Workers.

## JURISDICTION & VENUE

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA, 29 U.S.C. § 216(b).

9. This Court has general personal jurisdiction over NES with respect to this action because NES maintains its headquarters in Houston, Texas, which is in this District and Division.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because NES maintains its headquarters in Houston, Texas, which is in this District and Division.

## PARTIES

11. Rivas worked for NES as a Safety Advisor (or "HSE Advisor") from approximately December 2021 until June 2022.

12. During the relevant period, NES assigned Rivas to work for its client, Borealis.

13. Throughout her employment, NES paid Rivas a flat rate for each day worked regardless of the total hours worked in a day or week with no overtime ("day rate pay scheme").

14. Rivas's written consent is attached as **Exhibit 1**.

15. Rivas brings this action on behalf of herself and all other similarly situated NES workers who NES assigned to provide services to its client, Borealis, and paid under its illegal day rate pay scheme.

16. NES paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours worked in excess of 40 hours in a workweek in violation of the FLSA.

17. The FLSA collective of similarly situated employees or Day Rate Workers sought to be certified is defined as:

> **All current and former NES employees who were assigned to provide services to Borealis and were paid a day rate with no overtime at any time during the past 3 years through the present**

2

**("Day Rate Workers" or "Putative Collective").**[1]

18. The Day Rate Workers can be readily ascertained from NES's business and personnel records.

19. NES is a Florida limited liability company that maintains its headquarters in Houston, Texas.

20. NES may be served with process by serving its registered agent: **C T Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201**.

## COVERAGE UNDER THE FLSA

21. At all relevant times, NES was and is an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

22. At all relevant times, NES was and is an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

23. At all relevant times, NES has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

24. At all relevant times, NES has, and has had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials (including tools, equipment, hardhats, cell phones/devices, personal protection equipment, etc.) that have been moved in or produced for commerce.

25. In each of the past 3 years, NES has had and has an annual gross volume of sales made or business done of not less than $500,000.00.

---

[1] The Putative Collective expressly excludes any individuals who opted into *Alvarez v. NES Global, LLC*, No. 4:20-CV-01933 (S.D. Tex.) **and** did not work for NES after the opt-in period closed in the *Alvarez* matter on December 20, 2021.

26. At all relevant times, Rivas and the Day Rate Workers were engaged in commerce or in the production of goods for commerce.

27. NES uniformly applied its policy of paying its employees, including Rivas and the Day Rate Workers, a day rate with no overtime compensation.

28. NES applied this policy regardless of any alleged individualized factors such as precise job position, job duties/responsibilities, or geographic location.

29. By paying Rivas and the Day Rate Workers a day rate with no overtime compensation, NES violated (and continues to violate) the FLSA's requirement to pay employees at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 in a workweek.

30. As a result of NES's uniform day rate pay scheme, Rivas and the Day Rate Workers do not receive overtime as required by the FLSA.

31. NES's uniform compensation scheme of paying its Rivas and the Day Rate Workers a day rate with no overtime compensation for weeks in which these workers work over 40 hours is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

**FACTS**

32. NES is a staffing company that provides recruitment services to the oil and gas, construction, and energy industries.

33. To complete its business objectives, NES hires employees (including Rivas and the Day Rate Workers) to provide services to its clients, including Borealis.

34. Many of these individuals worked for NES on a day rate basis (without overtime pay).

35. These workers make up the proposed collective of Day Rate Workers.

36. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

37. For example, worked for NES as a Safety Advisor (or "HSE Advisor") from approximately December 2021 until June 2022.

38. During the relevant period, NES assigned Rivas to provide services to its client, Borealis.

39. As a Safety Advisor, Rivas's primary job duties included observing the work of contractors to ensure they complied with Borealis's safety policies, procedures, plans, and specifications, as well as all applicable codes and regulations, and providing Borealis with reports on the same.

40. Throughout her employment, NES classified Rivas as exempt from overtime and paid her on a day rate basis (without overtime).

41. Specifically, during her employment, NES paid Rivas a day rate of $600 for each day she actually worked, regardless of the number of hours she worked that day (or that workweek) and failed to pay her overtime compensation:

| Earnings | rate | days/hours | this period |
|---|---|---|---|
| Regular Defined Con | 600.0000 | 11.00 | 6,600.00 |
| Gross Pay | | | $6,600.00 |

42. NES purports to pay Rivas and the Day Rate Workers a base salary (or "retainer") based on 2 days worked (regardless of the number of hours worked those days, or in that workweek) paid at their respective day rates:

> In a work week in which any time is worked, Personnel is entitled to a guaranteed weekly salary of USD $1,200.00, which equals to 2 days of work in a particular work week at the daily rate.

5

43. But Rivas and the Day Rate Workers' purported "salaries" bear no "reasonable relationship … between the guaranteed amount and the amount [these employees] actually earned[,]" as required by 29 C.F.R. § 541.604(b).

44. This is because, in addition to their purported base "salaries," NES pays Rivas and the Day Rate Workers additional pay – on a day rate basis – for each day these employees work more than 2 in a workweek:

> In the event the Personnel works more than the days to meet the Retainer, **Personnel will be paid on a Daily Rate of USD $600.00 for all additional days worked.**

45. And Rivas and the Day Rate Workers regularly work far more than the minimum 2 days per week.

46. Indeed, Rivas and the Day Rate Workers regularly work 10+ hours a day, for up to 6 days a week.

47. Thus, Rivas and the Day Rate Workers' purported "salaries" (based on 2 days) bear no reasonable relationship to the amount they actually earned (based on 6 days). *See* 29 C.F.R. § 541.604(b); *see also* DOL Opinion Letter Fair Labor Standards Act (FLSA), No. FLSA2018-25, 2018 WL 5921453, at *2 (Nov. 8, 2018) (citing 29 C.F.R. § 541.604(b)); *cf. Helix Energy Sols. Grp., Inc. v. Hewitt*, --- S.Ct. ---, 2023 WL 2144441, at *6 (Feb. 22, 2023) ("Daily-rate workers, of whatever income level, are paid on a salary basis only through the test set out in § 604(b)").

48. NES uniformly paid Rivas and the Day Rate Workers under its illegal day rate pay scheme that deprived these employees of overtime compensation when they worked more than 40 hours in a workweek.

49. Rivas and the Day Rate Workers are not paid on a "salary basis."

50. Rivas and the Day Rate Workers are paid on a day rate basis (without overtime).

51. Indeed, if Rivas and the Day Rate Workers did not work, they did not get paid:

52. Rivas and the Day Rate Workers' day rates do not increase when they work more than 40 hours in a workweek.

53. Rivas and the Day Rate Workers do not receive overtime pay at when they work in excess of 40 hours.

54. This is despite Rivas and the Day Rate Workers often working 10+ hours a day, for up to 6 days a week.

55. Although Rivas and the Day Rate Workers typically worked 60+ hours/workweek, NES never paid them any overtime compensation.

56. Rivas and the Day Rate Workers work in accordance with the schedule set by NES and/or its client, Borealis.

57. Rivas's work schedule is typical of the Day Rate Workers.

58. NES knows Rivas and the Day Rate Workers work 10+ hours a day, for up to 6 days a week.

59. NES's records reflect the fact that Rivas and the Day Rate Workers regularly work far in excess of 40 hours in certain workweeks.

60. Rather than receiving time and half as required by the FLSA, NES pays Rivas and the Day Rate Workers a day rate regardless of the number of hours they worked in a day or workweek, and even if they worked more than 40 hours in a workweek.

61. NES controls Rivas and the Day Rate Workers' pay.

62. Likewise, NES (and/or its client, Borealis) controls all the significant or meaningful aspects of the job duties and work Rivas and the Day Rate Workers perform.

63. NES requires Rivas and the Day Rate Workers to follow NES's and Borealis's policies and procedures.

64. Rivas and the Day Rate Workers' work must adhere to the quality standards put in place by NES and/or Borealis.

65. Rivas and the Day Rate Workers are not required to possess any unique or specialized skillset (other than that maintained by all other inspectors in their respective positions) to perform their job duties.

66. Indeed, the daily and weekly activities of Rivas and the Day Rate Workers are routine and largely governed by standardized plans, procedures, and checklists created by NES and/or Borealis.

67. Virtually every job function is predetermined by NES (or Borealis), including the tools and equipment used at the job site, the data to compile, the schedule of work, and related work duties.

68. NES prohibits Rivas and the Day Rate Workers from varying their job duties outside of the predetermined parameters and requires Rivas and the Day Rate Workers to follow NES's (or Borealis's) policies, procedures, and directives.

69. NES (and/or Borealis) exercises control over the hours and locations Rivas and the Day Rate Workers work, the tools and equipment they use, the reports they provide, and the rates of pay they receive.

70. All of NES's Day Rate Workers perform similar work and are subjected to the same or similar policies and procedures which dictate the day-to-day activities they perform.

71. Rivas and the Day Rate Workers do not have the power to hire, fire, or discipline any employees.

72. Rivas and the Day Rate Workers do not supervise other employees.

73. Rivas and the Day Rate Workers do not exercise discretion or judgment with respect to matters of significance.

74. Thus, Rivas and the Day Rate Workers perform non-exempt job duties and, therefore, are entitled to overtime pay at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 hours in a workweek.

75. Rivas's working relationship with NES is similar to that of the Day Rate Workers.

76. All of NES's Day Rate Workers perform similar job duties, work similar hours, and are denied overtime as a result of the same illegal pay practice.

77. All of NES's Day Rate Workers work in excess of 40 hours each week and often work 60+ hours in a workweek.

78. NES uniformly denies Rivas and the Day Rate Workers overtime for the hours they work in excess of 40 hours in a single workweek.

79. NES's policy of paying Rivas and the Day Rate Workers a day rate with no overtime compensation violates the FLSA because it deprives Rivas and the Day Rate Workers of overtime for the hours they work in excess of 40 hours in a single workweek.

80. NES is aware, or should have been aware, that it was subject to the FLSA, including its overtime requirements.

81. NES is aware, or should have been aware, that the FLSA required it to pay Rivas and the Day Rate Workers overtime at rates not less than 1.5 times these employees' regular rates of pay for all hours worked in excess of 40 hours in a workweek.

82. NES is aware, or should have been aware, that Rivas and the Day Rate Workers were non-exempt from the FLSA's overtime provisions and, therefore, entitled to overtime pay.

83. NES is aware, or should have been aware, that Rivas and the Day Rate Workers regularly worked more than 40 hours in a workweek because it expected and required these workers to do so.

84. NES knew, should have known, or showed reckless disregard for, whether the conduct described in this Complaint violated the FLSA.

85. Indeed, NES (and its parent company) has been sued multiple times before for failing to pay employees overtime compensation in violation of the FLSA and analogous state wage and hour laws. *See, e.g.*, *Molleur v. NES Global, LLC*, No. 1:22-CV-00777 (D.N.M.); *Sachin v. NES Global, LLC*, No. 8:21-CV-00567 (C.D. Cal.); *Alvarez v. NES Global, LLC*, No. 4:20-CV-01933 (S.D. Tex.); *see also Richardson v. NES Global Talent US Inc.*, No. 4:20-CV-00223 (S.D. Tex.).

86. Nonetheless, NES did not pay Rivas and the Day Rate Workers overtime at rates not less than 1.5 times these employees' regular rates of pay for all hours worked in excess of 40 hours in a workweek in violation of the FLSA.

87. NES knowingly, willfully, or in reckless disregard carried out this illegal day rate pay scheme that deprived Rivas and the Day Rate Workers of overtime compensation in violation of the FLSA.

88. NES's failure to pay overtime compensation to Rivas and the Day Rate Workers was neither reasonable, nor was the decision not to pay these employees overtime made in good faith.

## COLLECTIVE ACTION ALLEGATIONS

89. Rivas realleges and incorporates all other paragraphs by reference.

90. Rivas brings her FLSA claim as a collective action under § 216(b) of the FLSA.

91. Numerous individuals were victimized by NES's pattern, practice, and policy of paying its Inspectors, including Rivas and the Day Rate Workers, a day rate with no overtime for hours worked in excess of 40 hours in a workweek, which is in willful violation of the FLSA.

92. Numerous other Day Rate Workers worked with Rivas and indicated they were paid in the same manner (a day rate with no overtime) and performed similar work.

93. Based on her experience and tenure with NES, Rivas is aware that that the illegal practices NES imposed on her were likewise imposed on the Day Rate Workers.

94. The Day Rate Workers are similarly situated in all relevant respects.

95. NES's failure to pay Rivas and the Day Rate Workers overtime wages at the rates required by the FLSA results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Day Rate Workers.

96. The specific job titles or precise job locations of the Day Rate Workers do not prevent collective treatment.

97. Rivas has no interest contrary to, or in conflict with, the Day Rate Workers.

98. Like each Day Rate Worker, Rivas has an interest in obtaining the unpaid overtime wages owed to them under federal law.

99. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

100. Absent this collective action, many Day Rate Workers likely will not obtain redress of their injuries, and NES will reap the unjust benefits of violating the FLSA.

101. Even if some of the Day Rate Workers could afford individual litigation against NES, it would be unduly burdensome to the judicial system.

102. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the class and provide for judicial consistency.

103. The questions of law and fact that are common to Rivas and each Day Rate Worker predominate over any questions affecting solely the individual members.

104. Among the common questions of law and fact are:

    a. Whether NES's illegal pay practices were applied uniformly across the nation to all Day Rate Workers;

      b.      Whether Rivas and the Day Rate Workers were exempt from overtime;

      c.      Whether NES's day rate pay scheme satisfies the salary basis test;

      d.      Whether NES's decision to not pay Rivas and the Day Rate Workers overtime was made in good faith; and

      e.      Whether NES's violations of the FLSA were willful.

105. Rivas's claims are typical of the claims of the Day Rate Workers.

106. Rivas and the Day Rate Workers sustained damages arising out of NES's illegal and uniform employment policies and practices.

107. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts.

108. Therefore, the issue of damages does not preclude collective treatment.

109. NES is liable under the FLSA for failing to pay overtime to Rivas and the Day Rate Workers.

110. Consistent with NES's illegal pay policy, Rivas and the Day Rate Workers were not paid the proper premium overtime compensation when they worked more than 40 hours in a workweek.

111. As part of their regular business practices, NES intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Rivas and the Day Rate Workers.

112. NES's illegal pay and classification policies deprived Rivas and the Day Rate Workers of the premium overtime wages they are owed under federal law.

113. NES is aware, or should have been aware, that FLSA required it to pay Rivas and the Day Rate Workers overtime at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 hours in a workweek.

114. There are many similarly situated Day Rate Workers who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

115. Notice of this lawsuit should be sent to the Day Rate Workers pursuant to 29 U.S.C. § 216(b).

116. Those similarly situated workers (the Day Rate Workers) are known to NES, are readily identifiable, and can be located through NES's business and personnel records.

## CAUSE OF ACTION
## VIOLATIONS OF THE FLSA

117. Rivas realleges and incorporates all other paragraphs by reference.

118. Rivas brings her FLSA claims as a collective action under 29 U.S.C. § 216(b).

119. As set forth herein, NES violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees (Rivas and the Day Rate Workers) in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than 40 hours without compensating such employees for their employment in excess of 40 hours per week at rates not less than 1.5 times the regular rates for which they were employed.

120. NES knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Rivas and the Day Rate Workers overtime compensation.

121. NES's failure to pay overtime compensation to Rivas and the Day Rate Workers was neither reasonable, nor was the decision not to pay overtime made in good faith.

122. Accordingly, Rivas and the Day Rate Workers are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their regular hourly rates of pay, plus an equal amount as liquidated damages, as well as attorney's fees and costs.

## JURY DEMAND

123. Rivas demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Rivas individually, and on behalf of the Day Rate Workers, prays for the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the Day Rate Workers allowing them to join this action by filing a written notice of consent;

b. A Judgment against NES awarding Rivas and the Day Rate Workers all their unpaid overtime compensation and an equal amount as liquidated damages;

c. An Order awarding attorneys' fees, costs, and expenses;

d. Pre- and post-judgment interest at the highest applicable rates; and

e. Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Michael A. Josephson*
**Michael A. Josephson**
Texas Bar No. 24014780
Federal ID No. 27157
**Andrew W. Dunlap**
Texas Bar No. 24078444
Federal ID No. 1093163
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
Federal ID No. 21615
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS FOR PLAINTIFF
& PUTATIVE CLASS MEMBERS**